2010 BNH 002
_____

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Bk. No. 09-11681-MWV |
| | Chapter 13 |
| Thomas F. DeSteph, | |
|        Debtor | |
| | |
| Nancy Gembitsky, | |
|        Plaintiff | |
| | |
| v. | Adv. No. 09-1090-MWV |
| | |
| Thomas F. DeSteph, individually and | |
| d/b/a The DeSteph Agency and | |
| d/b/a TDA Advantage Trust, | |
|        Defendants | |

*Andrew R. Schulman, Esq.*
GETMAN, STACEY, SCHULTHESS & STEER P.A.
*Attorney for Nancy Gembitsky*

*Grenville Clark, Esq.*
GRAY, WENDELL & CLARK, PC
*Attorney for Thomas F. DeSteph*

### MEMORANDUM OPINION

The Court has before it Thomas F. DeSteph's (the "Defendant") motion to compel production of documents (Ct. Doc. No. 43) (the "motion to compel") and motion to dismiss the complaint (Ct. Doc. No. 48) filed by Nancy Gembitsky (the "Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6), and the Plaintiff's objections thereto. In the complaint, the Plaintiff seeks damages for: (1) violation of the Securities and Exchange Act of 1934, (2) securities fraud under the New Hampshire Uniform Securities Act, (3) violation of the Connecticut Unfair Trade Practices Act, (4) breach of contract, (5) fraud, (6) conversion, (7) constructive trust, and (8) negligent misrepresentation. In order to continue discovery, the Defendant filed a motion asking the Court to order the Plaintiff to produce certain documents. A hearing was held on the motion to compel on November 10, 2009, and a hearing was held on the motion to dismiss on January 5, 2010. After both hearings, the Court took the matters under advisement.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND

The Plaintiff and Defendant met in the fall of 2002 when the Plaintiff was introduced to the Defendant to discuss possible investment ideas. At various times, the Defendant conducted business as The DeSteph Agency and TDA Advantage Trust. Additionally, the Defendant offered financial and investment advice to clients including the Plaintiff. In January 2003, the Plaintiff gave the Defendant a check for $100,000 (the "$100,000 transfer"). Subsequently in March 2003, the parties signed a promissory note related to the $100,000 transfer, however, the parties disagree as to the terms and conditions of the promissory note. The Plaintiff alleges that the $100,000 transfer was an investment in the TDA Advantage Trust managed by the Defendant. On the other hand, the Defendant claims the parties had a romantic relationship, and the $100,000 transfer was simply a loan given to the Defendant. According to the Plaintiff, the terms of the promissory note included provisions requiring the Defendant to pay the Plaintiff monthly interest payments on the $100,000 transfer and provided that the principal on the $100,000 transfer would be returned to the Plaintiff on or before January 2008.

In April 2009, the Plaintiff filed a complaint in the United States District Court for the District of New Hampshire against the Defendant alleging various counts under state and federal law and seeking damages in connection with the $100,000 transfer that took place between the parties. The Defendant filed for Chapter 13 bankruptcy on May 6, 2009, and the Plaintiff filed her complaint with this Court in the instant case on May 18, 2009. The Defendant has filed a motion to compel production of documents under Fed. R. Civ. P. 26 and a motion to dismiss the complaint under Fed. R. Civ. P 12(b)(6) for failure to state a claim upon which relief can be granted because the Plaintiff's claims are time-barred.

**DISCUSSION**

The Defendant filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). However, pursuant to Rule 12(b)(6), a motion to dismiss for failure to state a claim must be filed *before* a defendant files an answer. Fed. R. Civ. P. 12(b)(6). "Once a defendant files an answer, the pleadings are closed. At that time, a party may file a motion for judgment on the pleadings." Dartmouth Hitchcock Medical Center v. Cross Country Travvorps, Inc., 2009 WL 2020204 1, 1 (D.N.H. 2009) (citing Fed. R. Civ. P. 12(c)).[1] A motion for judgment on the pleadings is considered in the same manner as a Rule 12(b)(6) motion to dismiss. Curran v. Cousins, 509 F.3d 43-44 (1st Cir. 2007). "Because [a Rule 12(c)] motion calls for an assessment of the merits of the case at an embryonic state, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom . . . ." Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (internal citations omitted). "Those facts may be derived from the complaint, from documents annexed to or fairly incorporated in it, and from matters susceptible to judicial notice." Warren Feedenfeld Assoc., Inc. v. McTigue, 531 F.3d 38, 44 (1st Cir. 2008). When judgment on the pleadings is premised on the running of a statute of limitations, the motion will only be granted if the facts "leave no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998); accord Warren Freedenfeld Assoc., Inc., 531 F.3d at 44; Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005); Archdiocese of San Salvador v. FM Intern., Inc., 2006 WL 437493 1, 3 (D.N.H. 2006).

The Defendant also moves the Court to enter an order compelling the Plaintiff to produce certain documents relating to discovery. The Defendant's discovery request is governed under Fed. R. Civ. P. 26(b). Under Fed. R. Civ. P. 26(b)(1), discovery is generally available as to "any matter, not privileged,

---

[1] While the motion to dismiss is procedurally defective and this issue was raised by counsel for the Plaintiff, the Plaintiff proceeded only noting that because of the timing of the motion to dismiss, it should be considered under Fed. R. Civ. P. 12(c) as a motion for judgment on the pleadings.

that is relevant to the claim or defense of any party. . . ." The Court may limit the scope of discovery where "the burden or expense of the proposed discovery outweighs its likely benefit . . . ." Fed. R. Civ. P. 26(b)(2)(iii). Further, "[t]he party seeking information in discovery over an adversary's objection has the burden of showing its relevance." Caouette v. OfficeMax, Inc., 352 F.Supp.2d 134, 136 (D.N.H. 2005) (internal citations omitted).

      I.      **Motion for Judgment on the Pleadings**

The Defendant moves the Court to dismiss Counts I through VIII of the Plaintiff's complaint.[2] The statute of limitations period governing Counts I through III can be found in specific statutes relating to the actions averred. Counts IV through VIII of the Plaintiff's complaint are personal actions. In New Hampshire, "[e]xcept as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of . . . ." N.H. Rev. Stat. Ann. § 508:4, I. Section 508:4 incorporates the discovery rule. Under the discovery rule, "when the injury and its casual relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission," a claim accrues within three years of the time when the plaintiff "discovers, or in the exercise of reasonable diligence should have discovered, the injury and its casual relationship to the act or omission complained of." Archdiocese of San Salvador, 2006 WL 437493 at 3.

      A.      **Count I: Securities Fraud under Section 10(b) of the Securities and Exchange Act of 1934**

The first count of the Plaintiff's complaint alleges that the Defendant violated § 10(b) of the Securities and Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b), and Securities and Exchange

---

[2] The Defendant's motion to dismiss originally sought to dismiss all counts of the complaint, but the parties agreed that Counts I through VIII constituted causes of action, and the remaining counts were prayers for relief derivative of Counts I through VIII. Accordingly, the Court will only consider Counts I through VIII.

Commission Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.[3]  Section 10(b) of the 1934 Act makes it "unlawful for any person . . . to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j.  Rule 10b-5 further proscribes fraud, untrue statements of material facts, and omissions in connection with the sale of any security.  17 C.F.R. § 240.10b-5.

In 1991, the Supreme Court established the statute of limitations and statute of repose for causes of action under the 1934 Act.  Pursuant to the holding in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 360-363 (1991), an action commenced under § 10(b) of the 1934 Act and Rule 10b-5 must be commenced within one year from the time the plaintiff discovers or should have discovered the cause of action and no more than three years from the date of the transaction.  In 2002, Congress enacted the Sarbanes-Oxley Act ("Sarbanes-Oxley") which effectively extended the statute of limitations period for certain securities violations.  Under Sabanes-Oxley, an action like the one alleged in the Plaintiff's complaint "may be brought not later than the earlier of (1) 2 years after the discovery [of] the facts constituting the violation, or (2) 5 years after such violation."  28 U.S.C. 1658(b).  Therefore, in 1934 Act cases, the cause of action accrues on the date the sale or purchase of a security took place.

The Plaintiff avers that the Defendant violated the 1934 Act by making material misrepresentations and omissions of material fact in connection with the $100,000 transfer.  The Plaintiff alleges that she did not become aware of the facts constituting the violation until sometime in 2008.  However, the complaint states that the Plaintiff tendered a check for $100,000 to the Defendant on January 13, 2003 in connection with the transaction at issue.  Since the Plaintiff did not file her complaint until April 2009, more than five years had passed since the alleged violation and the statute of limitations has run on her action under the 1934 Act.  The fact remains the same even if the Court were to consider the

---

[3]The Defendant denies that the transaction involved a "security."  However, for purposes of a motion for judgment on the pleadings, the Court must assume that all allegations are true.

-5-

date the Defendant signed the promissory note (March 10, 2003) as the date of accrual.  Accordingly, Count I of the Plaintiff's complaint for violations under the Securities Act of 1934 is dismissed.

### B.     Count II: Securities Fraud under New Hampshire's Uniform Securities Act

The second count of the Plaintiff's complaint alleges that the Defendant violated New Hampshire's Uniform Securities Act.  N.H. Rev. Stat. Ann. §§ 421-B:3 and 421-B:5.[4]  New Hampshire's Uniform Securities Act is similar to the 1934 Act.  Sections 421-B:3 prohibits fraud, untrue statements, and omissions in connection with the offer, sale, or purchase of any security.  Section 421-B:5 further prohibits manipulative or deceptive and fraudulent acts in connection with the sale or purchase of a security.  That statute of limitations for actions brought under § 421 can be found in § 421-B:25.  Pursuant to § 421-B:25, "[a] person may not recover under this section in actions commenced more than 6 years after his first payment of money to the broker-dealer or issuer in the contested transaction."  N.H. Rev. Stat. Ann. § 421-B:25,VII.  A cause of action brought under chapter 421 begins to accrue at the time payment was made.  By the Plaintiff's own allegations, payment was tendered to the Defendant in connection with the contested transaction on or about January 13, 2003.  Since the Plaintiff's complaint was filed more than six years after this date, her action under § 421 is time-barred.

At the hearing, the Plaintiff argued that the discovery or fraudulent concealment rule found in N.H. Rev. Stat. Ann. § 508, *supra*, should apply to toll the limitations period for the § 421 count.  Thus, the Plaintiff contends, the statute of limitations did not begin to run until sometime in 2008 when she became aware that her transaction with the Defendant was a sham.  The purpose of the limitations period found in § 508 is to provide for "catch-all" statute of limitations and tolling provisions, "and to ensure that more specific statutes found elsewhere remain controlling."  Dogget v. Town of North Hampton Zoning Bd. of Adjustment, 645 A.2d 673, 675 (N.H. 1994).  Where a potential conflict exists between the limitations period found in § 508 and the section under which a cause of action is brought, the latter

---

[4]See n.3, *supra*.

controls. Id. ("[T]he purpose of RSA 508:1 is to preserve the vitality of limitations statutes found outside of RSA chapter 508.") In the present case, the Plaintiff's claim falls squarely under § 421-B which contains a very specific limitations period making resort to § 508 unnecessary. See id. Based on the foregoing, Count II of the Plaintiff's complaint for violations of N.H. Rev. Stat. Ann. § 421-B is dismissed.

### C. Count III: The Connecticut Unfair Trade Practices Act

Under Count III of the complaint, the Plaintiff alleges that the Defendant violated the Connecticut Unfair Trade Practices Act ("CUTPA") when the Defendant committed certain acts in connection with trade or commerce in the State of Connecticut. CUTPA provides that "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a). An action brought under CUTPA "may not be brought more than three years after the occurrence of a violation . . . ." Id. at § 42-110g(f). Generally, the language of CUTPA precludes tolling of the limitations period, "but CUTPA's statute of limitation may be tolled where the defendant's course of conduct is continuing." Kellog v. Key Bank of Maine (In re Kellog), 166 B.R. 504, 506 (Bankr. D. Conn. 1994) (quoting Fichera v. Mine Hill Corp., 541 A.2d 472, 474 (Conn. 1988)).

> To support a finding of a 'continuing course of conduct' that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong, and it may be found where there is a special relationship between the parties giving rise to a continuing duty, or later wrongful conduct by the defendant related to the prior wrongful act.

Id. at 508 (internal citations omitted). The test to determine whether there is a continuous course of conduct that will toll the time limitations of a CUTPA violation is "whether the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." Witt v. St. Vincent's Medical Center, 746 A.2d 753, 757 (Conn. 2000).

In the present case, the Plaintiff's complaint seems to allege that the misrepresentations by the Defendant included: (1) that the TDA Advantage Trust was a real business, (2) that the TDA Advantage Trust would pay the Plaintiff certain monthly payments, (3) that a limited partnership had been created, and (4) that the TDA Advantage Trust would return the principal on or before January 10, 2008. Further, the Plaintiff seems to claim that these misrepresentations were made in January or March of 2003, but the course of conduct had not completed until some time in 2008 either when the Defendant failed to complete the agreement or when the Defendant informed the Plaintiff that the "there was no money." Although the Plaintiff's claim appears to have accrued as of January or March 2003, the facts presented support an inference of a continuing course of conduct. The complaint alleges that the parties entered into a broker-investor type relationship. The Plaintiff alleges that the Defendant committed an initial wrong by making misrepresentations when the parties entered into a transaction in 2003 for the investment of $100,000. According to the supposed agreement, the Defendant was to make monthly payments to the Plaintiff, return the principal on January 10, 2008, and account for profits and losses. The Plaintiff claims the Defendant failed to make any payments and report on the performance of her investment. When the Plaintiff inquired about non-payment and performance reports, the Defendant responded by stating that the payments were reinvested as was routine and that the parties' agreement would be followed "to the letter." Assuming the truth of the facts alleged, it is plausible that (1) the Defendant committed a wrong in relation to the $100,000 transfer; (2) the transaction entered into created a special relationship between the parties conferring a fiduciary obligation that imposed certain duties on the Defendant in relation to the $100,000; and (3) the Defendant breached those duties when, *inter alia*, he failed to make monthly payments, provide performance reports, and made misrepresentations to the Plaintiff. The Court rejects the Defendant's defense, and the Plaintiff is allowed to proceed on Count III of the complaint.

### D.    Count IV: Breach of Contract

In the fourth count of the complaint, the Plaintiff claims damages for the Defendant's alleged breach of contract in connection with the $100,000 transfer. The action accrues at the time of the breach.

Pierce v. Metropolitan Life Ins. Co., 307 F. Supp. 2d 325, 328 (D.N.H. 2004).  The complaint alleges that a contract was entered into between January and March of 2003 whereby the TDA Advantage Trust would (1) pay the Plaintiff monthly interest payments beginning in April 2003, and (2) would return the principal payment of $100,000 on or before January 10, 2008.  Since the Defendant failed to make any payments under the contract, the Plaintiff alleges that the Defendant breached the contract.  "[W]hen an obligation is to be paid in installments the statute of limitations runs only against each installment as it becomes due . . . ."  Id. (quoting Gen. Theraphysical, Inc. v. Dupuis, 385 A.2d 227 (N.H. 1978).  Here, the Plaintiff maintains that no payments were received.  The act or omission complained of, that is the breach of contract, occurred each time the Defendant failed to tender a monthly payment and the Plaintiff was aware of this fact each month she did not receive payment.  Since the Plaintiff did not file her complaint until April 2009, the Plaintiff is barred for claims on payments relating to the three year period prior to the filing of the complaint in district court.  However, the remainder of the Plaintiff's claim for breach of contract is still within the statute of limitations.  As a result, Count VI is dismissed in part.

      **E.**     **Count V: Fraud**

Count V of the Plaintiff's complaint seeks damages for fraud.  To make a claim for fraud, a plaintiff must show that "the defendant intentionally made material false statements to the plaintiff, which the defendant knew to be false or which he had no knowledge or belief were true, for the purpose of causing, and which does cause, the plaintiff reasonably to rely to his detriment."  Hair Excitement, Inc. v. L'Oreal U.S.A., Inc., 965 A.2d 1032, 1038 (N.H. 2009) (internal citations omitted).  The Plaintiff alleges that the Defendant committed fraud when he intentionally made the following misrepresentations in order to induce her to invest in the TDA Advantage Trust: (1) the Plaintiff would be investing in a limited partnership, (2) the Plaintiff would receive monthly interest payments on her investment, and (3) the Defendant would return the principle to the Plaintiff in January 2008.  The Plaintiff also claims that the Defendant made these misrepresentations knowing he had no intention of paying the Plaintiff.  These statements were supposedly made in January or March 2003, but the Plaintiff contends they continued

until July 2008. Moreover, the Plaintiff argues that she could not have known that the Defendant's statements were untrue until July 2008 when the Defendant admitted he had no money to pay her. The facts presented lend to an inference that a fraud was committed in January or March 2003. However, because the complaint contends that the Defendant repeatedly assured the Plaintiff that the parties' agreement would be followed, it is plausible that the Plaintiff did not discover or could not have reasonably discovered that she was the victim of fraud until sometime within the statute of limitations. The Plaintiff is permitted to proceed on Count V since the Court finds that the discovery rule is applicable to the Plaintiff's fraud claim.

### F.     Count VI: Conversion

The Plaintiff brings Count VI under the common law doctrine of conversion. The complaint provides no specific dates as to when the alleged conversion took place. Moreover, the Plaintiff only mentions that the Defendant took control of the Plaintiff's money and unlawfully converted it. Conversion is defined as "the intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Muzzy v. Rockingham County Trust Co., 309 A.2d 893, 894 (N.H. 1973). For the purposes of this motion, the Court must view the facts in the pleading in the light most favorable to the Plaintiff and draw all reasonable inferences therefrom. Assuming that the Plaintiff has a valid claim for conversion, the statute of limitations began as soon as the Defendant's exercise of control over the Plaintiff's money became wrongful; that is, when the Defendant ignored the Plaintiff's request that her money be returned and continued to hold it in his custody. See Schomaker v. U.S., 2008 WL 2065918 1, 8 (D.N.H. 2008). In the complaint, the Plaintiff alleges that on at least two occasions she demanded that the Defendant return her money, but he refused to do so. The first request was made in January 2003, more than three years prior to the filing of the complaint. Furthermore, the discovery rule cannot apply in the instant case as the Plaintiff was aware that her property remained in the Defendant's custody despite her request that it be returned. See id. at 4 (equitable tolling only applies if the plaintiff "did not have, and

could not have had with due diligence, the information essential to bringing suit." (quoting Portsmouth Country Club v. Town of Greenland, 366 F.3d 32, 42 (1st Cir. 2004)).  Thus, the Plaintiff's claim seeking damages for conversion is time-barred, and Count VI of the complaint is dismissed.

### G. Count VII: Constructive Trust

Count VII of the complaint involves an action to impose a constructive trust on property of the Defendant.  The Plaintiff claims the Defendant violated a duty imposed by a fiduciary relationship when he failed to use the Plaintiff's money as instructed and instead purchased a condominium and minivan.  As a result, the Plaintiff seeks to impose a constructive trust on the aforementioned property.  As discussed under the analysis for the fraud claim, from the facts presented a plausible inference can be made that the Plaintiff had no knowledge, prior to some time within the limitations period prescribed under N.H. Rev. Stat. Ann. § 508:4, I, that the Defendant mishandled or misapplied the Plaintiff's investment.  See Marcucci v. Hardy, 65 F.3d 986, 989 (1st Cir. 1995) (holding that the limitations period for a constructive trust action was tolled where defendant's conduct disguised the need for legal action).[5]  Hence, the Plaintiff is allowed to proceed on Count VII of the complaint.

### H. Count VIII: Negligent Misrepresentation

In Count VIII of the complaint, the Plaintiff brings a cause of action for the Defendant's negligent misrepresentation.  The Plaintiff alleges that the Defendant negligently made certain misrepresentations and omissions in connection with the $100,000 transfer.  The elements of a cause of action for negligent misrepresentation are (1) a negligent misrepresentation of a material fact by the defendant, and (2) justifiable reliance by the plaintiff.  Snierson v. Scruton, 761 A.2d 1046, 1049-50 (N.H. 2000).  As outlined under the Court's analysis of the fraud and constructive trust claims, it is plausible that the

---

[5]At the hearing on the on motion for judgment on the pleadings, the Plaintiff insisted that the Court consider the doctrine of laches to determine whether the constructive trust action was time-barred. The Court finds that the proper limitations period for a constructive trust action is found in N.H. Rev. Stat. Ann. § 508:4, I.  Because the claim is not time-barred under § 508:4, analysis under the doctrine of laches is unnecessary.

Plaintiff could not have discovered that the Defendant's actions constituted negligent misrepresentation until sometime within the three year statutory time period for bringing such an action. Consequently, the Plaintiff is allowed to proceed on Count VIII of the complaint.

**II.     Motion to Compel Production of Documents**

In accordance with discovery procedures, the Defendant filed a motion to compel production of documents as to certain requests made to the Plaintiff. The Defendant moves the Court to order the Plaintiff to produce the following: (1) tax returns from the time of the exchange of the $100,000 transfer through the present, (2) documentation from the estate of the Plaintiff's mother, (3) the mortgage application for the Plaintiff's current home, (4) documents related to the sale of Plaintiff's Connecticut home, (5) Sprint telephone bills issued to the Plaintiff, (6) bank accounts, and (7) a picture identifying a physical mark on the Plaintiff's body.

The Defendant asserts that he needs the Plaintiff's tax returns in order to show the manner in which the Plaintiff categorized the $100,000 transfer on her tax returns. The Defendant intends to show that the Plaintiff did not report the $100,000 on her tax returns. In the Plaintiff's objection to the Defendant's motion and during the hearing on the motion, the Plaintiff stipulated that she did not make any reference to the $100,000 on her tax returns. Accordingly, production of the Plaintiff's tax returns are unnecessary.

The Defendant also requests documents relating to the estate of the Plaintiff's mother. The Defendant requests such documentation to show that the money for the $100,000 transfer did not come from an inheritance. First, the Plaintiff represented to the Court that there was no probate. Second, the Plaintiff states that she does not have any documents relating to her mother's estate and, even if she did, the documents were destroyed when her basement flooded in both 2005 and again in 2008. Thus, there is no documentation available for production. The Defendant requests the Plaintiff's bank account for similar reasons. The Defendant provides no basis for the relevance of such requests. Because the Court finds no relevance in the origin of the exchanged money as to the claims or defenses in this case, it will

not order the Plaintiff to produce her bank accounts or documents relating to the estate of the Plaintiff's mother.

The Defendant next requests that the Plaintiff produce the mortgage application for her current home. The Defendant maintains that the mortgage application is necessary for the same reasons as the tax returns, that is, to evidence the Plaintiff's characterization of the $100,000 transfer. Again, the Plaintiff stipulated that she did not list the $100,000 transfer on her mortgage application. Further, the Plaintiff stated she does not have the mortgage application in her possession. If the Defendant still wishes to obtain the mortgage application, the Plaintiff has agreed to sign a release in order to allow the Defendant to obtain the document. However, he can do so at his own expense since the stipulation makes production of the mortgage application unnecessary.

While the Defendant requests documents relating to the sale of the Plaintiff's Connecticut home, he provides no argument to meet his burden of showing the relevance of such a request over the Plaintiff's objection. Conversely, the Defendant established that his request for the Sprint telephone bills is relevant to his defense. The Defendant claims that the call logs on the Sprint telephone bill may evidence the Plaintiff's truthfulness or untruthfulness as to allegations made in the complaint. The Plaintiff states that she no longer is in possession of the telephone bills, but does not object to signing a release allowing the Defendant to obtain these bills. The Plaintiff does, however, object to bearing the cost of production. "[T]he presumption is that parties must satisfy their own costs in replying to discovery requests." Dahl v. Bain Capital Partners, LLC, 655 F.Supp.2d 146, 146 (D. Mass. 2009) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978)). Courts will shifts costs to the requesting party in limited circumstances such as when the responding party shows that production would cause an undue burden or cost. Id. These conditions are not present here. The Plaintiff has not identified how she will sustain an undue burden or cost in contacting her telephone provider for the requested bills. As such, the Court orders the Plaintiff to produce the Sprint telephone bills for October 2002 - when the parties met - until March 2003 when the parties allegedly signed the promissory note.

Finally, the Defendant moves the Court to order the Plaintiff to produce a photograph that evidences a certain physical mark on the Plaintiff's body.  The Plaintiff argues that the request is embarrassing, irrelevant, and unduly burdensome.  The Court agrees.  Although the Defendant claims that production of this photograph is necessary to show that the parties had an intimate relationship, he provides no convincing argument evidencing that the probative value of such a photograph outweighs the prejudice to the Plaintiff.  Since the benefit of allowing the production of the photograph is outweighed by the burden of production, the request is denied.

## CONCLUSION

For the reasons set out herein, the complaint is dismissed as to Counts I, II, and VI.  The Plaintiff is permitted to proceed on Counts III, V, VII, and VIII.  As to Count IV, the complaint is dismissed as it relates to payments for the three year period prior to the filing of the complaint in district court, but is allowed as to all other claims.  In addition, the Court orders the Plaintiff to produce her Sprint telephone bills for October 2002 until March 2003, however, the remainder of the Defendant's motion to compel production of documents is denied.  This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

DATED this 25th day of January, 2010, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge